**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LINDSTROM, et al., | |
| Plaintiffs, | Civil Action No. 15-8084 (ES) |
| v. | OPINION |
| ST. JOSEPH'S SCHOOL FOR THE BLIND, INC., et al., | |
| Defendants. | |

**SALAS, DISTRICT JUDGE**

This matter is before the Court upon Defendants' motion to dismiss Plaintiffs' Complaint under Federal Rule of Civil Procedure 12(b)(6). (D.E. No. 8). Having considered the submissions made in support of and in opposition to Defendants' motion, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b).

As set forth below, the Court GRANTS-in-part and DENIES-in-part Defendants' motion to dismiss.

I.    **Factual Background**[1]

Plaintiff Alec Lindstrom ("Mr. Lindstrom") is a 20-year old handicapped male. (D.E. No. 1 ("Compl.") ¶¶ 1-2). "His disabilities include blindness, cerebral palsy, and developmental delays." (*Id.* ¶ 2). "Mr. Lindstrom is unable to speak[] and has a very limited ability to communicate his wants and needs." (*Id.*).

---

[1] The Court must accept Plaintiff's factual allegations as true for purposes of resolving the pending motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bistrian v. Levi*, 696 F.3d 352, 358 n.1 (3d Cir. 2012).

In light of his disabilities, Mr. Lindstrom was a "residential student" at Defendant St. Joseph's School for the Blind, Inc. (the "School") since July 2010. (*Id.* ¶ 11). Mr. Lindstrom would live at the School during the week and return home each weekend. (*See id.* ¶¶ 12-13). Whenever he was not attending the School, Mr. Lindstrom would live with his mother, Plaintiff Lisa Lindstrom ("Mrs. Lindstrom"). (*Id.* ¶¶ 3, 4, 14). On December 2, 2014, a New Jersey state court appointed Mrs. Lindstrom as Mr. Lindstrom's guardian. (*Id.* ¶ 4).

Starting in February 2015, "Mrs. Lindstrom began to notice bed bug bites on Mr. Lindstrom when he would return home" from the School on the weekends. (*Id.* ¶ 15). "This situation occurred on numerous occasions between February of 2015 and July of 2015." (*Id.* ¶ 16). So, during this time period, Mrs. Lindstrom "continuously communicated" to the School and Defendant David Feinhals ("Mr. Feinhals")—who is the executive director of the School—that the School "had a bed bug outbreak" and she "demanded that action be taken to resolve the problem." (*Id.* ¶¶ 8, 17).

But, despite "Mrs. Lindstrom's repeated demands for action," the School and/or Mr. Feinhals "failed to remediate the bed bug problem"—and "Mr. Lindstrom continued to be bitten." (*Id.* ¶ 18). His health became "so significantly impaired by his bed bug bites" that he "received medical care on several occasions." (*Id.* ¶ 19). Mr. Lindstrom's body was "scarred due to the bed bug bites he received" at the School. (*Id.* ¶ 20).

Plaintiffs allege that—"[i]nstead of resolving its bed bug problem"—the School and/or Mr. Feinhals "unilaterally terminated Mr. Lindstrom's placement" at the School in June 2015 in what they allege was "a blatant retaliatory move." (*Id.* ¶ 21).

Accordingly, Plaintiffs brought this action, asserting violations of the Americans with Disabilities Act (the "ADA") and the Rehabilitation Act against the School (Count I), the New

Jersey Law Against Discrimination ("NJLAD") against the School (Count II), the Nursing Home Act against the School (Count III), and a state law tort claim against both the School and Mr. Feinhals (Count IV). (*See id.* ¶¶ 23-53).

## II. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Determining whether there is "a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

"When reviewing a motion to dismiss, '[a]ll allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom.'" *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (quoting *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992)). But the court is not required to accept as true "legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

So, the inquiry is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the

well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus*, 641 F.3d at 563.

Finally, "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) ("In evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint, and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, and items appearing in the record of the case." (internal quotation marks, textual modifications and citations omitted)).

### III.   Discussion

#### A.   Count I: Section 504 of the Rehabilitation Act & the ADA (against the School only)

##### 1.   The Parties' Arguments

`        Defendants note that Plaintiffs do not specify which provisions of either the ADA or the Rehabilitation Act have been allegedly violated or how Defendants violated any such provisions. (D.E. No. 8-3 ("Mov. Br.") at 7).  Defendants, however, construe Plaintiffs' Complaint to be asserting a cause of action under Title III of the ADA—i.e., 42 U.S.C. § 12181, *et seq.*—based on their allegations. (*See id.* at 8 n.2 ("Paragraph 25 asserts that [the School] 'operations affect commerce,' which is an element of determining whether a private entity constitutes a 'public accommodation' under Title III. Accordingly, Defendants assume that Plaintiffs are seeking relief under Title III of the ADA . . . ." (internal citation omitted))).

Under Title III, Defendants aver that religious organizations are exempt from the ADA's purview. (*Id.* at 8).  Defendants asserts that the School's "structure and purpose are undeniably

religious, as demonstrated in the school's public documents and filings"—and, therefore, it is exempt from liability under Title III of the ADA. (*Id.* at 11-12). Moreover, Defendants contend that Title III "does not permit individuals to recover *damages* for any violations of the statute." (*Id.* at 12 (emphasis added)). And, citing Plaintiffs' request for relief under Count I, Defendants state that they have not requested injunctive relief. (*Id.* at 12-13).

With respect to the Rehabilitation Act aspect of Count I, Defendants argue that—although receipt of federal funding is a prerequisite for application of Section 504 of the Rehabilitation Act—Plaintiffs only make a "bald unsupported assertion in their Complaint" that the School "was the recipient of Federal Funding during all times relevant hereto." (*Id.* at 13-14 (citing Compl. ¶ 24)). They assert that this allegation is "baseless and without factual support," and without adequately pled facts showing that the School received federal funds, the Rehabilitation Act does not apply to the School. (*Id.* at 14).

Finally with respect to Count I, Defendants argue that—even if the School is not exempt under the ADA and the Rehabilitation Act—Plaintiffs failed to plead that the School's decision to terminate Mr. Lindstrom's placement was *because of* his disability. (*Id.*). In other words, Defendants contend that Plaintiffs fail to "assert a causal link between [Mr.] Lindstrom's disabilities and the alleged discriminatory or retaliatory conduct." (*Id.* at 17).

In opposition, as to their Section 504 Rehabilitation Act claim, Plaintiffs argue that Defendants' "unconfirmed, bold contention that [the School] does not receive Federal Funding cannot be determined without discovery; therefore, [their] Section 504 claim should not be dismissed at this point in time." (D.E. No. 11-1 ("Opp. Br.") at 6). Plaintiffs contend that they "properly plead in Paragraph 24" that the School "received Federal Funding during all relevant time periods" and this "factual averment alone should be enough to defeat [the School's]

allegation to the contrary." (*Id.*).  In any event, Plaintiffs contend that their factual allegation regarding federal funding is supported by the School's representations and services, as well as its receipt of tuition payments and its licensing requirements. (*See id.* at 6-10). Plaintiffs also argue that they adequately plead facts supporting disability discrimination or improper retaliation for a Section 504 claim. (*See id.* at 10-13).

As for the ADA aspect of Count I, Plaintiffs dispute that the School is entitled to an ADA religious exemption because N.J.A.C. § 6A:14-7.2 governs the School—which requires that the School's program be non-sectarian. (*Id.* at 14-15). Plaintiffs also note that the School's receipt of federal funding further undermines entitlement to a religious exemption. (*Id.* at 15).

Further, Plaintiffs contest that they may only seek equitable relief because they purportedly have two distinct ADA claims: relief under Title III and relief based on retaliation by the School against Mr. Lindstrom. (*Id.* at 16).  They acknowledge the School's "contention that equitable relief is the typical remedy in this type of ADA litigation," but assert that "getting prospective injunctive relief for Mr. Lindstrom to return to [the School] is not an option." (*Id.* at 16-17).

Finally, Plaintiffs argue their ADA claims are properly pled, incorporating "by reference the legal analysis, caselaw [sic], and argumentation" in support of their Section 504 Rehabilitation Act claim. (*See id.* at 19-20).

### 2. Analysis

The parties' arguments concerning Count I raise several issues—some of which the Court need not decide at this juncture as set forth below.

*First*, the Court addresses Defendants' argument that Plaintiffs cannot recover monetary damages under Title III of the ADA. (*See* Mov. Br. at 12-13; D.E. No. 12 ("Reply Br.") at 7).

"Title III of the ADA provides a private cause of action to persons subjected to disability discrimination in places of public accommodation." *La. Counseling & Family Servs. Inc. v. Mt. Fuji Japanese Rest.*, No. 08-6143, 2011 WL 3273548, at *4 n.4 (D.N.J. July 27, 2011) (citing 42 U.S.C. §§ 12182(a), 12188(a)(2)). But "[t]he enforcement provision of Title III, 42 U.S.C. § 12188, authorizes only injunctive relief." *Cottrell v. Zagami, LLC*, No. 08-3340, 2009 WL 1416044, at *3 n.1 (D.N.J. May 20, 2009). So "Title III defendants cannot be liable for money damages." *Bowers v. Nat'l Collegiate Athletic Ass'n*, 346 F.3d 402, 433 (3d Cir. 2003) (citing 42 U.S.C. § 12188(a)).

Here, for their Title III claim, Plaintiffs seek a judgment against the School "for compensatory damages, attorneys' fees, expert fees, punitive damages, interest, and cost of suit." (*See* Compl. at 5). But Plaintiffs appear to concede that "equitable relief is the typical remedy in this type of ADA litigation." (*See* Opp. Br. at 16). As noted, they aver that "getting prospective injunctive relief for Mr. Lindstrom to return to [the School] is not an option." (*Id.* at 17).

The Court declines Plaintiffs' invitation to expand the scope of available relief under Title III. The scope of relief is statutorily defined—and, as Defendants' aptly note, (*see* Reply Br. at 7), Plaintiffs' request for monetary relief falls outside the statutorily-defined bounds of available relief. *See* 42 U.S.C. § 12188(a).

That said, the Court is mindful of Plaintiffs' argument that they purportedly assert two distinct ADA claims—i.e., one under Title III and one for retaliation under 42 U.S.C. § 12203. (*See* Opp. Br. at 16). Yet, Plaintiffs do not make a particularized argument for how monetary damages are appropriate under a Section 12203 retaliation claim. Nor do Defendants address the propriety of monetary damages under Section 12203.

Accordingly, in the abundance of caution, the Court dismisses Plaintiffs' ADA claim *without prejudice*. Defendants are free to renew their arguments in favor of dismissal if Plaintiffs file an amended complaint with any ADA claim. To be sure, the Court declines to reach Defendants' sufficiency-of-pleading arguments at this time because it is unclear whether Plaintiffs will pursue an ADA claim in light of this Court's ruling above regarding the permissible relief sought under Title III. Further, for the same reasons discussed immediately below with respect to federal funding relating to Plaintiffs' Rehabilitation Act claim, the Court declines to address Defendants' religious-exemption argument in Rule 12(b) motion practice.[2]

*Second*, the Court addresses Defendants' federal-funding argument raised to dismiss Plaintiffs' Rehabilitation Act claim. The parties do not appear to dispute that federal funding is a prerequisite for Plaintiffs' assertion of this claim; rather, they dispute whether the School has received such funding. (*See* Mov. Br. at 13-14; Opp. Br. at 6-10; Reply Br. at 5).

The problem is, however, both parties seem to advance arguments that the Court cannot consider in Rule 12(b)(6) motion practice. For their part, Defendants assert that Plaintiffs' allegation regarding federal funding in Paragraph 24 of their Complaint is "baseless and without factual support." (*See* Mov. Br. at 14; *see also* Reply Br. at 5 ("Plaintiffs cannot rely upon untrue factual averments to substantiate their baseless claims.")). Predictably, Plaintiffs counter that Defendants' "unconfirmed, bold contention . . . cannot be determined without discovery." (*See* Opp. Br. at 6). In fact, Plaintiffs proffer materials concerning Mr. Lindstrom's town's

---

[2] In particular, Defendants unequivocally liken this case to one out of the Eastern District of Pennsylvania and argue that the School is exempt for purposes of Title III. (*See* Mov. Br. at 10-12 (citing *Marshall v. Sisters of Holy Family of Nazareth*, 399 F. Supp. 2d 597 (E.D. Pa. 2005)). But the *Marshall* case was resolved on summary judgment, and Defendants provide the Court with no reason for accepting their exemption argument at this stage (i.e., without discovery). Rather, given the parties' arguments, it appears to make perfect sense for the Court to tackle Defendants' exemption argument—like the one raised in *Marshall*—in summary-judgment motion practice. Moreover, as discussed in the Court's analysis of Plaintiffs' NJLAD claim *supra*, Defendants do not rebut Plaintiffs' contention that the School is governed by N.J.A.C. § 6A:14-7.2—which appears to require the School to be non-sectarian. (*See* Opp. Br. at 14-15).

purported direct payment of tuition to the School and the School's licensure. (*See id.* at 7-10). In its reply, Defendants again criticize Plaintiffs for lacking a "factual basis." (*See* Reply Br. at 5).

Given the parties' positions, the Court finds that this federal-funding issue shall be the subject of summary-judgment motion practice. As such, the Court will not dismiss Plaintiffs' Section 504 claim at this time on the grounds that the School does not receive federal funds.

*Third*, the Court addresses Defendants' contention that Plaintiffs' Section 504 claim is inadequately pled. (*See* Mov. Br. at 14-17; Reply Br. at 2-4). Section 504 of the Rehabilitation Act provides, in relevant part, that:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of . . . his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

29 U.S.C. § 794(a). For a Section 504 claim, a plaintiff must prove:

> (1) that he is a disabled individual under the Rehabilitation Act; (2) that he is otherwise qualified for the position sought; (3) *that he was excluded from the position sought, denied the benefits of, or subjected to discrimination under the program or activity solely by reason of his disability*; and (4) that the program or activity in question receives federal financial assistance.

*Brown v. Ancora Psychiatric Hosp.*, No. 11-7159, 2013 WL 4033712, at *5 (D.N.J. Aug. 7, 2013) (emphasis added) (internal quotation marks omitted); *see also Bowers v. Nat'l Collegiate Athletic Ass'n*, 9 F. Supp. 2d 460, 490 (D.N.J. 1998). "A plaintiff cannot make out a claim under § 504 merely by proving '(1) that he was denied some service and (2) he is disabled.'" *Oliver v. Johnson*, No. 09-5336, 2014 WL 2619845, at *8 (D.N.J. June 11, 2014) (quoting *Andrew M. v. Del. Cty. Office of Mental Health & Retardation*, 490 F.3d 337, 350 (3d Cir. 2007)).

So, causation is an element of a Rehabilitation Act claim. *See Lamberson v. Pennsylvania*, 561 F. App'x 201, 207 (3d Cir. 2014) (stating that "a disability must be the sole cause of the alleged discrimination under" the Rehabilitation Act (internal quotation marks and citation omitted)); *CG v. Pa. Dep't of Educ.*, 734 F.3d 229, 235-36, 236 n.11 (3d Cir. 2013) (stating that the Rehabilitation Act "allows a plaintiff to recover if he or she were deprived of an opportunity to participate in a program solely on the basis of disability" and its "causation requirement requires disability to be the sole cause of discrimination").

But neither the Complaint nor Plaintiffs' opposition sets forth that Mr. Lindstrom was discriminated against *because of* his disability. Plaintiffs' Rehabilitation Act claim is therefore deficient regarding causation. *See Carter v. Hamilton Affordable Hous., LLC*, No. 09-2399, 2009 WL 3245483, at *6 (D.N.J. Oct. 6, 2009) (dismissing Rehabilitation Act claim because, in part, plaintiff failed to allege "that she was excluded from a program or service, or from receiving a benefit, solely by reason of a disability"); *Robinson v. Burlington Cty. Bd. of Soc. Servs.*, No. 07-2717, 2008 WL 4371765, at *5 (D.N.J. Sept. 18, 2008) ("Even though the Court . . . views the facts in a light most favorable to plaintiff on a motion to dismiss, the complaint simply does not allege that [plaintiff] was denied benefits 'solely by reason of' his mental impairment. There are no facts plead that could suggest that [plaintiff] was denied benefits solely because of his adjustment disorder or paranoid personality disorder. As the complaint is currently written, it does not state a claim under the [Rehabilitation Act].").

Apparently as an alternative argument, Plaintiffs contend that their Rehabilitation Act claim "should not be dismissed because they have also properly plead a claim for Section 504 *retaliation* against" the School. (Opp. Br. at 12 (emphasis added)). For a retaliation claim under the Rehabilitation Act, "plaintiffs must show (1) that they engaged in a protected activity, (2)

that defendants' retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her rights, and (3) that there was a causal connection between the protected activity and the retaliatory action." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

Here, the issue under this theory of liability is whether the factual allegations satisfy the protected-activity element. Plaintiffs contend that "they engaged in a protected activity" by "advocating that the bed bug infestation with Mr. Lindstrom's program at [the School] be abated." (Opp. Br. at 13 (citing Compl. ¶¶ 15-20)). Defendants counter that Mrs. Lindstrom's complaints to the School "about the alleged bed bug problem do not give rise to protected activity." (Reply Br. at 3).

The problem is that Plaintiffs do not provide the Court with any standard to determine whether their allegations support protected activity. Rather, Defendants cite *Connolly v. Mitsui O.S.K. Lines (America), Inc.*, where a New Jersey federal court set forth that—for purposes of the ADA—protected activity "can consist of informal complaints to management *concerning discriminatory activity*, participation in *antidiscrimination* proceedings, opposition to *discriminatory practices*, or a request for accommodation under the ADA." No. 04-5127, 2007 WL 4207836, at *5 (D.N.J. Nov. 21, 2007) (emphases added) (citations omitted).

Here, however, Plaintiffs' allegations simply do not permit the Court to reasonably infer that Mrs. Lindstrom's complaints concerned discriminatory activity. In other words, there are no allegations from which the Court can reasonably infer that the School retaliated in light of Mr. Lindstrom's disability. In fact, in their opposition brief, Plaintiffs characterize the protected activity as "advocating that the bed bug infestation interfering with Mr. Lindstrom's program at [the School] be abated." (Opp. Br. at 13). As such, Plaintiffs advance no argument as to how

Mrs. Lindstrom's alleged complaints—that fail to implicate the existence of any discrimination based on disability—constitute protected activity. The Court therefore dismisses Plaintiffs' Rehabilitation Act claim *without prejudice*.

In sum, the Court dismisses the ADA claim *without prejudice* based on the relief Plaintiffs seek and dismisses the Rehabilitation Act claim *without prejudice* based on insufficiency of pleading sufficient factual allegations. For the reasons stated, the Court declines to address (at this time) Defendants' religious-exemption argument in connection with Plaintiffs' ADA claim, the sufficiency of factual allegations supporting Plaintiffs' ADA claim, and Defendants' federal-funding argument in connection with Plaintiffs' Rehabilitation Act claim.

### B. Count II: NJLAD (against the School only)

#### 1. The Parties' Arguments

Defendants assert that Plaintiffs' NJLAD claim should be dismissed for very similar reasons as asserted for dismissal of Count I. (Mov. Br. at 18). Defendants argue that New Jersey law has an exemption for religious-based educational institution—and the School "falls squarely within the exemption set forth in the NJLAD." (*Id.* at 18-19). Moreover, Defendants argue that—even if the School was not exempt—Plaintiffs have failed to "sufficiently plead either discrimination or retaliation under the NJLAD" because they fail "to assert a causal link between [the School's] actions and [Mr.] Lindstrom's disabilities." (*Id.* at 21).

In opposition to Defendants' religious-exemption argument, Plaintiffs argue that the analysis is the same as under the ADA and should be rejected for the same reasons. (*See* Opp. Br. at 20). Further, they assert that the School is "foreclosed from claiming that it is running a program exempted from coverage under N.J.S.A. § 10:5-5(l) because it must run a non-sectarian program in order to comply with N.J.A.C. § 6A:14-7.2." (*Id.* at 21).

And, regarding the sufficiency of pleading their NJLAD claim, Plaintiffs contend that they allege that the School "operates a place of public accommodation," that "Mr. Lindstrom is a member of a protected class," and that "Mr. Lindstrom was denied equal access to [the School's] program." (*Id.* at 21-22). They also maintain that the NJLAD prohibits retaliation against someone who complains about violations of the law. (*Id.* at 22). To that extent, Plaintiffs argue that they allege: (1) engagement "in a protected activity, i.e.[,] advocating that the bed bug infestation interfering with Mr. Lindstrom's program at [the School] be abated"; and (2) that Mr. Lindstrom "was thrown out of [the School] due to Mrs. Lindstrom's complaints about bed bugs." (*Id.*).

### 2. Analysis

The NJLAD prohibits discrimination in places of public accommodation, including that relating to disability. *See* N.J.S.A. § 10:5-12(f). Excluded from the definition of "public accommodation," however, is "any educational facility operated or maintained by a bona fide religious or sectarian institution." *Id.* § 10:5-5(l).

But the Court cannot find as a matter of law—at least at this time—that the School is exempt under the NJLAD. In particular, Plaintiffs make a persuasive argument—which is tellingly left unrebutted by Defendants—that the School is governed by N.J.A.C. § 6A:14-7.2. (*See* Opp. Br. at 14-15, 21). N.J.A.C. § 6A:14-7.2 provides, in relevant part, that "each approved private school for students with disabilities shall submit: An affidavit that its programs and services for students with disabilities are *nonsectarian*." N.J.A.C. § 6A:14-7.2(a)(3)(i) (emphasis added). Moreover, given the parties' arguments, it appears that this issue is best left for summary-judgment motion practice. (*See, e.g.*, Opp. Br. at 14-15, 20; Reply Br. at 9).

That said, the sufficiency of pleading an NJLAD claim is at issue. Plaintiffs appear to assert both unlawful discrimination and unlawful retaliation under the NJLAD. (*See* Opp. Br. at 21-22). But their Complaint is deficient under either theory of liability because nowhere do they allege—or permit the Court to draw a reasonable inference—that Mr. Lindstrom was denied equal treatment given his disability[3] or that he was retaliated against because Mrs. Lindstrom's complained that Mr. Lindstrom was being denied benefits given his disability.[4]

Accordingly, the Court must dismiss Count II *without prejudice*.

### C. Count III: The Nursing Home Act (against the School only)

#### 1. The Parties' Arguments

Defendants assert that Plaintiffs have no cause of action under N.J.S.A. 30:13-1 because the School is not a nursing home. (Mov. Br. at 22). Citing the Certificate of Incorporation, Defendants contend that the School "is not intended to, and does not provide, medical or nursing care, other than the type of nursing found in any school." (*Id.*). Defendants assert that the School is only a school and a licensed group home—not a nursing home—so Count III should be dismissed. (*Id.* at 23).

In opposition, Plaintiffs cite the definition of "nursing home" under N.J.S.A. § 30:13-2(c) and argue that they "allege facts demonstrating that [the School] meets each of the requirements of the . . . statute." (Opp. Br. at 23 (citing Compl. ¶ 42)). Plaintiffs argue that the statute is

---

[3] *See Vandeusen v. Mabel Realty of Bordentown, LLC*, No. 12-0330, 2012 WL 1664116, at *3 (D.N.J. May 11, 2012) ("To state a claim on which relief can be granted, a plaintiff must show that (1) defendant operates a place of public accommodation; (2) the plaintiff is a member of a protected class; and (3) *he or she was denied equal treatment on the basis of his or her membership in a protected class*." (emphasis added) (internal quotation marks and citations omitted)).

[4] *See Cottrell v. Good Wheels*, No. 08-1738, 2011 WL 900038, at *5 (D.N.J. Mar. 15, 2011) ("Under . . . the NJLAD, a plaintiff establishes unlawful retaliation if he proves: (1) that he was engaged in a protected activity; (2) adverse action by the defendant contemporaneous with the protected activity; and (3) a causal connection between the protected activity and the adverse action."); *Acquaviva v. Elgen Mfg., Inc.*, No. A-0163-11, 2013 WL 5762356, at *3 (N.J. Super. Ct. App. Div. Oct. 25, 2013) (per curiam) ("Acquaviva made no complaints to Elgen about sexual or religion-based harassment—that is, she did not engage in a protected LAD activity that might have triggered retaliatory action.").

"clear, unambiguous, and admits only one interpretation"—which is that the School "is covered by the statute." (*Id.* at 24).

### 2. Analysis

By statute in New Jersey, a "nursing home" is

> any institution, whether operated for profit or not, which maintains and operates facilities for extended medical and nursing treatment or care for two or more nonrelated individuals who are suffering from acute or chronic illness or injury, or are crippled, convalescent or infirm and are in need of such treatment or care on a continuing basis. Infirm is construed to mean that an individual is in need of assistance in bathing, dressing or some type of supervision.

N.J.S.A. § 30:13-2(c).

The only allegations Plaintiffs cite to save their claim from dismissal are that: the School was "operating a nursing home"; the School "maintained and operated facilities for extended medical and nursing treatment and/or care for Mr. Lindstrom and at least one other non-related individual"; the individuals cared for by the School, including Mr. Lindstrom, "suffered from acute or chronic illnesses or injuries, were crippled, or were convalescent or infirmed"; and Mr. Lindstrom and other individuals cared for by the School "were in need of treatment and care on a continuing basis." (Opp. Br. at 23 (citing Compl. ¶ 42)).

A complaint that offers "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555)). Simply put, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted). "Although a plaintiff may use legal conclusions to provide the structure for the complaint, the pleading's factual content must independently 'permit the court to infer more than the mere possibility of misconduct.'"

*Guirguis v. Movers Specialty Servs., Inc.*, 346 F. App'x 774, 776 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679)).

Here, it is readily apparent that Plaintiffs have recited the language of the statute in their Complaint without any factual support that is particular to the parties in this case concerning the Nursing Home Act, N.J.S.A. § 30:13-1 *et seq.* (*See* Compl. ¶ 42). As such, Plaintiffs' Complaint lacks factual allegations that would permit the Court to conclude that the School meets the statutory definition of a nursing home under N.J.S.A. § 30:13-2(c). Given the legal principles in *Iqbal* and *Twombly* recited above, the Court finds that this is insufficient to satisfy the requirements of Federal Rule of Civil Procedure 8(a). *See also Nicholas v. CMRE Fin. Servs., Inc.*, No. 08-4857, 2009 WL 1652275, at *2 (D.N.J. June 11, 2009) (granting motion to dismiss where the plaintiff's complaint "limit[ed] itself to the language of the statutes and fail[ed] to provide any facts specific" to the plaintiff).

Indeed, given the allegations throughout the Complaint, it is unclear how Plaintiffs can assert a claim under New Jersey's Nursing Home Act. In particular, it is unclear how Plaintiffs can allege facts supporting that the School "maintains and operates facilities for extended medical and nursing treatment or care." *See* N.J.S.A. § 30:13-2(c). But because the Court is dismissing Plaintiffs' Complaint *without prejudice* regarding other claims, the Court declines to dismiss this Count *with prejudice* at this juncture. The Court nevertheless cautions Plaintiffs to carefully consider the propriety of bring any such claim in the future. Count III is dismissed *without prejudice*.

### D. Count IV: New Jersey State Law Tort Claim (against the School & Mr. Feinhals)

#### 1. The Parties' Arguments

Finally, Defendants argue that Plaintiffs' negligence claim is barred by New Jersey's Charitable Immunity Act. (Mov. Br. at 23). They aver that each of the following three requirements to assert a charitable-immunity defense is met here: (1) the School was formed for a non-profit purpose; (2) the School was organized exclusively for religious and educational purposes; and (3) Mr. Lindstrom was a beneficiary of the School when he was allegedly injured. (*See id.* at 23-33). Accordingly, Defendants argue that Plaintiffs' negligence claims are statutorily barred. (*Id.* at 33-34).

In opposition, Plaintiffs argue that Defendants "overlook the fact that the Charitable Immunity Act only applies to negligence claims, and **not** to claims premised on gross negligence or wanton and willful conduct." (Opp. Br. at 25). And Plaintiffs contend that they have alleged that Defendants "were grossly negligently [sic] in their care of Mr. Lindstrom, or that they acted in a willful and wanton manner when caring for Mr. Lindstrom." (*Id.* at 26 (citing Compl. ¶ 51)).

#### 2. Analysis

New Jersey law provides, in relevant part, that:

> No nonprofit corporation, society or association organized exclusively for religious, charitable or educational purposes or its trustees, directors, officers, employees, agents, servants or volunteers shall, except as is hereinafter set forth, be liable to respond in damages to any person who shall suffer damage from the negligence of any agent or servant of such corporation, society or association, where such person is a beneficiary, to whatever degree, of the works of such nonprofit corporation, society or association . . . .

N.J.S.A. § 2A:53A-7(a). But this statute—referred to as the Charitable Immunity Act—"immunizes simple negligence only, and not other forms of aggravated wrongful conduct, such as malice or fraud, or intentional, reckless and wanton, or even grossly negligent behavior." *Hardwicke v. Am. Boychoir Sch.*, 902 A.2d 900, 915-17 (N.J. 2006) (internal quotation marks and citation omitted).

The parties appear to agree that the Charitable Immunity Act immunizes against a negligence claim; they disagree, however, as to whether Plaintiffs have asserted a cause of action that is something more than negligence and, therefore, would not be immunized by the Act. (*See* Opp. Br. at 25-26; Reply Br. at 14).

In particular, Plaintiffs allege that Defendants were grossly negligent and engaged in wanton and willful conduct by, among other things, (1) failing "to take appropriate actions to eradicate bed bugs from their facility after Mrs. Lindstrom repeatedly advised personnel including Mr. Feinhals that Mr. Lindstrom was being bitten by bed bugs," (2) failing "to take appropriate actions to eradicate bed bugs from their facility after their own agents, servants, workmen, and/or employees repeatedly found that Mr. Lindstrom was being bitten by bed bugs," and (3) knowingly allowing "bed bugs to bite Mr. Lindstrom, and then, after not acting to stop the situation, fail[ing] to medically treat Mr. Lindstrom." (Compl. ¶¶ 50-51).

Defendants are right that merely using the phrases "grossly negligent" and "wanton and willful conduct" does not necessarily mean that the factual allegations support such claims. (*See* Reply Br. at 14). So, effectively, Defendants contest that Plaintiffs' factual allegations support such claims. (*See id.*).

But, given the totality of the allegations and giving Plaintiffs the benefit of every favorable inference (as this Court must when resolving a Rule 12(b)(6) motion), the Court finds

that Plaintiffs allegations sound in something *more* than simple negligence. Indeed, the Court must accept as true that Mr. Lindstrom—a disabled man who, among other things, is blind and unable to speak—was being bitten by bed bugs at the School, that Mrs. Lindstrom notified the School and Mr. Feinhals about the bed-bug problem, that Mr. Lindstrom continued to be bitten notwithstanding the School and Mr. Feinhals having been provided notice of the bed-bug problem, and that Mr. Lindstrom received medical care and suffered scarring. (*See* Compl. ¶¶ 1-2, 15-20). Accordingly, the Court finds that Defendants' Charitable Immunity Act defense does not warrant dismissal of Count IV as a matter of law.

### IV. Conclusion

The factual allegations in Plaintiffs' Complaint are undoubtedly troubling. Although the Court must accept as true these allegations, the Court cannot find that Plaintiffs have stated a claim upon which relief can be granted for the first three Counts of their Complaint. As noted above, these causes of actions are dismissed *without prejudice*. But the Court finds that Count IV of Plaintiffs' Complaint is not immunized by New Jersey's Charitable Immunity Act given the allegations in Plaintiffs' Complaint and Defendants' arguments made in favor of dismissal. Defendants' motion to dismiss Count IV is therefore denied. An appropriate Order accompanies this Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**